.[L. A. No. 22894.   In Bank.   Sept. 23, 1955.]

MANNING T. ALLEN et al., Plaintiffs and Appellants, v. CITY OF LONG BEACH et al., Defendants and Appellants.

[L. A. No. 22895.   In Bank.   Sept. 23, 1955.]

ELWIN L. ALGER et al., Plaintiffs and Appellants, v. CITY OF LONG BEACH et al., Defendants and Appellants.

Albert D. White and Nowland M. Reid for Plaintiffs and Appellants in No. 22894.

Kenneth Sperry for Plaintiffs and Appellants in No. 22895.

Wahlfred Jacobson, City Attorney, and Clifford E. Hayes, Deputy City Attorney, for Defendants and Appellants.

GIBSON, C. J.—On March 29, 1945, the city of Long Beach undertook to withdraw substantially all pension rights granted by section 187 of its charter to employees of the police and fire departments, and we held that the action of the city was invalid as to persons employed before that date. (*Kern* v. *City of Long Beach*, 29 Cal.2d 848 [179 P.2d 799].) Those who thereafter entered the police and fire departments were offered no pension benefits until 1950 when the city entered into a contract with the state, pursuant to section 20450 et seq. of the Government Code, for the purpose of making such persons members of the state employees' retirement system. In 1951 section 187.2 of the charter was enacted altering the pension rights of policemen and firemen employed prior to March 29, 1945.

Plaintiffs are members of the police and fire departments, and their employment commenced before March 29, 1945. They brought these actions in declaratory relief seeking a determination of their rights under the charter as amended, and the actions were consolidated for trial. Judgment was rendered upholding two changes in plaintiffs' pension rights and invalidating a third, and all parties have appealed from the judgment.

The 1951 changes in pension rights involved here are:

(1) The amount of each employee's contribution to the city retirement system was raised from 2 per cent of his salary to 10 per cent;

(2) The method of computing the pension benefits payable to employees retiring after 25 years of service was altered to provide for payment of a fixed rather than a fluctuating amount; and

(3) Employees absent by reason of military service were required, upon reinstatement to city employment, to pay into the retirement fund an amount equal to that which would have been deducted from their salaries had they not been absent. Prior to enactment of section 187.2 no such contri-

butions were required from any employee returning from leave of absence granted for military or other purposes.

The trial court upheld the provisions raising the amount of the employees' contributions to the pension system and changing the method of computing pension benefits, and it invalidated the requirement that an employee returning from military service make a contribution to the retirement fund covering the period of his absence.

An employee's vested contractual pension rights may be modified prior to retirement for the purpose of keeping a pension system flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system. (*Wallace* v. *City of Fresno,* 42 Cal.2d 180, 184 [265 P.2d 884] ; *Packer* v. *Board of Retirement,* 35 Cal.2d 212, 214 [217 P.2d 660] ; *Kern* v. *City of Long Beach,* 29 Cal.2d 848, 854-855 [179 P.2d 799].) Such modifications must be reasonable, and it is for the courts to determine upon the facts of each case what constitutes a permissible change. To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages. (*Wallace* v. *City of Fresno,* 42 Cal.2d 180, 185 [265 P.2d 884] ; see *Packer* v. *Board of Retirement,* 35 Cal.2d 212, 214, 218-219 [217 P.2d 660].) In the present case it appears that section 187.2 substantially decreases plaintiffs' pension rights without offering any commensurate advantages, and there is no evidence or claim that the changes enacted bear any material relation to the integrity or successful operation of the pension system established by section 187 of the charter.

The provision raising the rate of an employee's contribution to the city pension fund from 2 per cent of his salary to 10 per cent obviously constitutes a substantial increase in the cost of pension protection to the employee without any corresponding increase in the amount of the benefit payments he will be entitled to receive upon his retirement.

The method of computing benefits was revised, under section 187.2, by substituting a fixed pension for the fluctuating pension previously provided for, and the sum to be paid as a pension is based on one-half the average monthly salary earned by the employee during the five years preceding his retirement or death. Prior to enactment of this section a retired employee was to receive a benefit equal to one-half the salary currently

attached to the position which he had held one year prior to his retirement, and under the plan then in operation the amount of his benefit would fluctuate from time to time after retirement to reflect changes in the salary schedule attached to his old position. Payment of a fixed amount freezes the benefit at a figure which is based on salary scales preceding retirement, thus the longer an employee is retired on a fixed pension the more likely it is that the amount of his pension will not accurately reflect existing economic conditions, whereas a retired employee receiving a fluctuating pension based on the salaries that active employees are currently receiving can maintain a fairly constant standard of living despite changes in our economy. We are at present in an era of rising salaries and high cost of living. The salaries of all policemen and firemen were raised $30 per month shortly after the effective date of section 187.2, and most salaries have been further increased by ordinance since that time. This court pointed out in *Casserly* v. *City of Oakland,* 6 Cal.2d 64, 69 [56 P.2d 237], that a "pension measured by the pay of officers of similar rank inures to the benefit of pensioners, when the value of money is low and the pay increased." (*Cf. Terry* v. *City of Berkeley,* 41 Cal.2d 698, 703 [263 P.2d 833], involving applicability of a similar charter amendment to persons already retired, where it was stated that the change from a fluctuating to a fixed pension was detrimental to pensioners.) It is, of course, impossible to predict with certainty whether, at the time of retirement of each of the employees here involved, the amount paid him under a provision for a fixed benefit would be greater or less than that paid him under a fluctuating benefit system, but that very uncertainty indicates the advantage of a plan for fluctuating benefits which attempts, however roughly, to reflect the actual purchasing power of the dollar. Under all the circumstances, it appears that plaintiffs' rights would be adversely affected by the change to the fixed benefit plan.

■ The portion of section 187.2 which requires employees returning from military service to pay into the pension fund an amount equal to that which would have been deducted from their salaries had they not been absent cannot be supported as a reasonable modification of their pension rights. The fact that they are given credit for time spent in military service in computing the length of their employment for purposes of retirement is immaterial since they, as well as employees granted leaves of absence for other purposes, were

entitled to such a time credit under section 187 without the necessity of making any contribution to cover the period of their absence. The provision requiring contributions imposes a considerable financial burden upon those who, while in the armed forces, earn less than they would earn as city employees, and it raises the cost to them of pension protection without securing any advantage in addition to that which they already enjoyed. Moreover, there appears to be no reasonable justification for requiring contributions from employees returning from military service when no comparable provision is made affecting employees returning from leaves of absence granted for other purposes.

The city does not claim that any of the provisions contained in section 187.2 was necessary to preserve or protect the pension program applicable to persons employed before March 29, 1945, and there is no indication that the city would have difficulty in meeting its obligations to those employees under the provisions of section 187. In explanation of the changes made by section 187.2 the city states that they were enacted in order to make the pension system for persons employed prior to March 29, 1945, more nearly coincide with the retirement system established by contract with the state for policemen and firemen employed after that date, thus to ameliorate ''personal problems'' assertedly created by differences in pension costs and benefits to the two groups of employees and to ''somewhat equalize the compensation provided for employees who perform like services.'' Such purposes, however beneficial to the city, bear no relation to the functioning and integrity of the pension system established for persons employed prior to March 29, 1945, and constitute no justification for materially reducing the vested contractual rights earned by plaintiffs prior to the time section 187.2 was adopted.

Cases relied on by the city which were decided prior to *Kern* v. *City of Long Beach*, 29 Cal.2d 848 [179 P.2d 799], are not controlling here, and the series of decisions culminating in *Allstot* v. *City of Long Beach*, 104 Cal.App.2d 441 [231 P.2d 498], which upheld a charter amendment depriving employees of the opportunity to earn an increase in their pensions by remaining in service after reaching retirement age, are distinguishable from the present case.

That portion of the judgment invalidating a part of section 187.2 is affirmed; in all other matters the judgment is reversed,

with directions to enter judgment in conformity with this opinion.

Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Defendants and Appellants' petition for a rehearing was denied October 19, 1955. Edmonds, J., was of the opinion that the petition should be granted.