[Civ. No. 21113.   Second Dist., Div. Two.   Feb. 17, 1956.]

DONALD C. COCHRAN, Appellant, v. CITY OF
LONG BEACH et al., Respondents.

Kenneth Sperry for Appellant.

Walhfred Jacobson, City Attorney, and Clifford E. Hayes, Deputy City Attorney, for Respondents.

ASHBURN, J.—The question in this case is whether petitioner, a retired patrolman of the Long Beach Police Department, must accept a pension of a fixed amount or is entitled to a pension which fluctuates from month to month and year to year in proportion to the salary of a patrolman then on active duty.

Petitioner having been permanently injured on March 15, 1952, while in the performance of duty as a member of the Police Department of the City of Long Beach, was forced to retire from active duty on the following day, March 16. After appropriate proceedings therefor, the city council granted petitioner a disability pension dating from March 16, 1953, instead of March 16, 1952, and refused to order any payments for the intervening period of one year. Petitioner filed the instant proceeding in mandate to compel respondent city to grant a pension from March 16, 1952, in an amount equal to

one-half of the salary attached to his rank of patrolman in said police department; petitioner specifically relied upon section 187, subdivision 3 of the city charter, alleging that he was "entitled to be retired from active service and to receive a disability pension in an amount equal to one-half of the salary attached to the rank or position held by him at the time of his inability to continue in such service, to wit, March 15, 1952." The court granted the application, directed respondents to make an order granting petitioner a disability pension dating from March 23, 1952, and "payable monthly in an amount equal to 50% of the average monthly salary earned by petitioner during the five years immediately preceding March 23, 1952, which said average monthly salary shall be determined by dividing the total salary earned by petitioner during said five-year period by the actual number of months or portion thereof during which he earned such salary." Petitioner appeals from "that portion of the judgment which limits the disability pension payable to petitioner to an amount equal to fifty per cent (50%) of the average monthly salary earned by petitioner during the five years immediately preceding March 23, 1952, and which fails to order the respondents to grant him a disability pension equal to fifty per cent (50%) of the salary currently attached to the rank formerly held by petitioner, to wit, that of Patrolman in the Long Beach Police Department, as said salary varies from time to time in accordance with the provisions of Section 187, subdivision (3) of the Long Beach City Charter."

Petitioner entered the service on November 1, 1941, suffered permanent injury on March 15, 1952, and was compelled to retire on March 16, 1952. When he entered the department, subdivision 3 of section 187 of the charter was in effect. ■ It was enacted in 1925 and provided that "such person so retired shall, during his lifetime, be paid from said pension fund a yearly pension equal to one-half (½) of the amount of the salary attached to the rank or position held by him in such department at the date of such retirement order." (Stats. 1925, p. 1335.) This language has been construed to provide a fluctuating pension, one which increases or decreases as salaries paid to active employees increase or decrease. (*Casserly* v. *City of Oakland,* 6 Cal.2d 64 [56 P.2d 237]; *Terry* v. *City of Berkeley,* 41 Cal.2d 698, 700 [263 P.2d 833].) ■ The basic concept is that "pension payments are deferred compensation" (*Wallace* v. *City of Fresno,*

42 Cal.2d 180, 184 [265 P.2d 884]); and the statutes are to be liberally construed to effectuate their beneficent purpose. (*Terry* v. *City of Berkeley, supra,* 41 Cal.2d 698, 702.)

As appears from *Allen* v. *City of Long Beach,* 45 Cal.2d 128, 130 [287 P.2d 765]: "On March 29, 1945, the city of Long Beach undertook to withdraw substantially all pension rights granted by section 187 of its charter to employees of the police and fire departments, and we held that the action of the city was invalid as to persons employed before that date. (*Kern* v. *City of Long Beach,* 29 Cal.2d 848 [179 P.2d 799].) Those who thereafter entered the police and fire departments were offered no pension benefits until 1950 when the city entered into a contract with the state, pursuant to section 20450 et seq. of the Government Code, for the purpose of making such persons members of the state employees' retirement system. In 1951 section 187.2 of the charter was enacted altering the pension rights of policemen and firemen employed prior to March 29, 1945."

Said section 187.2 (adopted on June 5, 1951) provides: "(b) The amount to be paid as a pension to each person who shall be granted a pension subsequent to the effective date of this amendment pursuant to the rights thereto vested by reason of the provisions of Section 187 of this Charter prior to the repeal thereof by the adoption of Section 187.1 hereof, shall be based in each instance upon the applicable percentage of the average monthly salary earned during the five (5) years immediately preceding the retirement or death of the person whose service formed the basis for such right to a pension. Such average monthly salary shall be determined by dividing the total salary earned by such person during said five-year period by the number of months during which such person earned such salary." (Stats. 1951, p. 4635.) The effect of this enactment is to substitute a pension of a fixed amount for the fluctuating type previously guaranteed by subdivision 3 of section 187.

This court held in *Rustad* v. *City of Long Beach,* 122 Cal. App.2d 106 [264 P.2d 955], that section 187.2 is valid in its application to members of the department whose employment began before March 29, 1945. The controlling facts were exactly parallel with those at bar. Rustad had joined the fire department in July, 1941, was injured in September, 1950 (before § 187.2 was enacted), but his disability and right to pension were not determined until December 3, 1951. The court concluded that section 187.2 governed his pension

right, and at page 108 of the opinion emphasized the fact that section 187, subdivision 3, was repealed and section 187.2 enacted "before he became disabled and entitled to be paid his pension." Relying on *Terry* v. *City of Berkeley, supra,* 41 Cal.2d 698, and similar cases, the court determined that section 187.2 was a reasonable change which could be made without impairment of any vested right if the change was effected before the right to payment of a pension had accrued. Petitioner Cochran was employed in 1941, was injured in March, 1952, and became entitled to payments beginning in March, 1952. Section 187, subdivision 3, was repealed and section 187.2 was enacted "before he became disabled and entitled to be paid his pension" as in the Rustad case.

The Terry case was decided on November 25, 1953; Rustad on December 17, 1953, and hearing denied February 10, 1954; *Wallace* v. *City of Fresno, supra,* 42 Cal.2d 180, was decided on January 29, 1954. ■ The court in the Wallace case reiterated the rule applied by this court in Rustad, saying at page 183: "A public employee who serves under pension provisions similar to those contained in the 1923 ordinance acquires a vested contractual right to a substantial pension. This right arises before the happening of the contingency which makes the pension payable, and it cannot be constitutionally abolished by subsequent changes in the law. (*Kern* v. *City of Long Beach,* 29 Cal.2d 848, 852 et seq. [179 P.2d 799].) ■ In discussing the nature of an employee's rights we recognized in the Kern case that a public pension system is subject to the implied qualification that the governing body may make reasonable modifications and changes before the pension becomes payable and that until that time the employee does not have a right to any fixed or definite benefits but only to a substantial or reasonable pension." And at page 184: "A number of decisions applying the principles announced in the Kern case have upheld, as reasonable, amendments which were enacted after the employees involved had earned some pension rights but before their pensions became payable." *Packer* v. *Board of Retirement,* 35 Cal.2d 212 [217 P.2d 660] (April 25, 1950), says at page 218: "It appears, therefore, that both the cases and the policy underlying pensions for public employees indicate that any one or more of the various benefits offered, including interests created for third persons, may be wholly eliminated prior to the time they become payable, provided, of course, the employee retains the right to a substantial pension."

■ The Supreme Court in *Allen* v. *City of Long Beach, supra,* 45 Cal.2d 128 (decided September 23, 1955), has established a new criterion for determining the reasonableness of changes made in a retirement system before the right of a member to payment of pension has accrued. At page 159 the court says: "Such modifications must be reasonable, and it is for the courts to determine upon the facts of each case what constitutes a permissible change. To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and *changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages. (Wallace* v. *City of Fresno,* 42 Cal.2d 180, 185 [265 P.2d 884] ; see *Packer* v. *Board of Retirement,* 35 Cal.2d 212, 214, 218-219 [217 P.2d 660].) '' (Emphasis added.) We are unable to deduce from the cited Wallace and Packer opinions a rule requiring compensating new advantages as the price of changes which result in disadvantage to the employees. But it is enough to know that the Allen case is the latest pronouncement of the Supreme Court. In effect it holds that section 187.2 of the charter cannot be applied validly to one in petitioner Cochran's status, and that Rustad no longer reflects the law of this state. The fact that the opinion does not mention the Rustad case does not impair this conclusion. (*Bohn* v. *Bohn,* 164 Cal. 532 [129 P. 981] ; *People* v. *Bateman,* 57 Cal.App.2d 585 [135 P.2d 192] ; *Kenney* v. *Antioch Live Oak Sch. Dist.,* 18 Cal. App.2d 226 [63 P.2d 1143].)

In the Allen and the companion Alger case, 45 Cal.2d 128 [287 P.2d 765], members of the police and fire departments whose service began before March 29, 1945, and who were still on active duty, brought action for declaratory relief as to their rights under the charter as amended by section 187.2. Among the 1951 changes involved was: "The method of computing the pension benefits payable to employees retiring after 25 years of service was altered to provide for payment of a fixed rather than a fluctuating amount." (P. 130.) The trial judge upheld application of the formula of section 187.2 to the plaintiffs, and was reversed in that respect. At page 159, after using language above quoted, the court continued: "In the present case it appears that section 187.2 substantially decreases plaintiffs' pension rights without offering any commensurate advantages, and there is no evidence or claim that

the changes enacted bear any material relation to the integrity or successful operation of the pension system established by section 187 of the charter." At page 160: "The method of computing benefits was revised, under section 187.2, by substituting a fixed pension for the fluctuating pension previously provided for, and the sum to be paid as a pension is based on one-half the average monthly salary earned by the employee during the five years preceding his retirement or death. Prior to enactment of this section a retired employee was to receive a benefit equal to one-half the salary currently attached to the position which he had held one year prior to his retirement, and under the plan then in operation the amount of his benefit would fluctuate from time to time after retirement to reflect changes in the salary schedule attached to his old position. Payment of a fixed amount freezes the benefit at a figure which is based on salary scales preceding retirement, thus the longer an employee is retired on a fixed pension the more likely it is that the amount of his pension will not accurately reflect existing economic conditions, whereas a retired employee receiving a fluctuating pension based on the salaries that active employees are currently receiving can maintain a fairly constant standard of living despite changes in our economy. . . . It is, of course, impossible to predict with certainty whether, at the time of retirement of each of the employees here involved, the amount paid him under a provision for a fixed benefit would be greater or less than that paid him under a fluctuating benefit system, but that very uncertainty indicates the advantage of a plan for fluctuating benefits which attempts, however roughly, to reflect the actual purchasing power of the dollar. Under all the circumstances, it appears that plaintiffs' rights would be adversely affected by the change to the fixed benefit plan."

There are no controlling factual differences between the Allen case and the one at bar. Moreover, the fact of a detrimental effect upon petitioner of application of section 187.2 to his pension clearly appears. At page 10 of the opening brief appellant makes this statement, which is based upon a stipulation found in the record and which is not denied by respondent: "Based upon the formula provided by Section 187.2, subdivision (b), the fixed pension granted appellant pursuant to the judgment of the trial court herein amounts to $151.05 per month. Under the fluctuating pension provided for by Section 187, subdivision (3), appellant's monthly benefits as of the date of the trial would have

amounted to $208.50 and to considerably more at the present time.''

The Allen case commands a reversal of the instant judgment.

The judgment is reversed with directions to enter judgment in conformity with this opinion.

Moore, P. J., and Fox, J., concurred.