[Civ. No. 27009. First Dist., Div. Two. Feb. 17, 1971.]

JERRY NEWHOUSER et al., Plaintiffs and Appellants, v.
BOARD OF TRUSTEES OF THE POLICE AND FIRE RELIEF OR
PENSION FUND OF THE POLICE AND FIRE DEPARTMENTS
OF THE CITY OF ALBANY et al., Defendants and Appellants.

324

## COUNSEL

Carroll, Davis, Burdick & McDonough, Davis, Cowell & Bowe and Philip Paul Bowe for Plaintiffs and Appellants.

Lawrence D. Saler, City Attorney, for Defendants and Appellants.

## OPINION

**TAYLOR, J.**—These cross-appeals are from a judgment granting a peremptory writ of mandate, directing the Board of Trustees of the Police and Fire Commissioners of the City of Albany, its City Council and Auditor (hereafter City) to pay fluctuating retirement benefits pursuant to sections 50(c) and 50(d) of its charter. Plaintiffs, six retired police and firemen of the City of Albany, appeal from a portion of the judgment, contending that the trial court erred as to the method of computation to be used, and in decreeing that the City was not estopped from raising the three-year statute of limitations (Code Civ. Proc., § 338).[1] The City appeals from the portion of the judgment decreeing that the retirement benefits fluctuated in accordance with the pay of active firemen and policemen of similar rank instead of being fixed on the date of retirement.

The facts are not in dispute. The applicable City charter provisions, section 50(c), relating to service retirement, and section 50(d), relating to service-connected disability retirement, respectively, set forth in full below,[2]

---

[1] The statute applies to mandamus proceedings for the recovery of pension benefits (*Dillon* v. *Board of Pension Commrs.*, 18 Cal.2d 427 [116 P.2d 37, 136 A.L.R. 800]).

[2] Section 50(c): "PENSIONS, TO WHOM AND AMOUNTS Whenever any person at the taking effect of this act, or thereafter, shall have been duly elected, appointed or selected, and sworn, and have served for twenty years, or more, in the aggregate, as a member, in any capacity or any rank whatever, of the regularly constituted Fire or Police Department of the said City of Albany, County of Alameda, State of Cali-

provide, so far as here pertinent, that each retiree shall be paid from the fund, in case of 50(c), "a yearly pension equal to . . . one-half [or two-thirds] of the amount of the *average yearly salary attached to the rank* which he may have held . . . *for the period of five (5) years next preceding the date of such retirement* . . ." or in the case of 50(d), "a yearly pension equal to one-half (½) of the *amount of salary attached to the rank* which he may have held . . . *at the date of . . . retirement."* (Italics added.) Each of the six plaintiffs is a former employee of the City and retired pursuant to either section 50(c) or 50(d) at the time set forth.[3]

fornia, said Board shall upon the application of such person, order and direct that such person, after becoming sixty years of age, be retired from further service in such Police or Fire Department, shall cease, and such person so retired shall thereafter, during his lifetime, be paid from such fund a *yearly pension equal to one-half of the amount of the average yearly salary attached to the rank which he may have held* in said Police or Fire Department *for the period of five (5) years next preceding the date of such retirement* provided, however, that any person who comes within the purview of this section, who has otherwise complied with its provisions and who has served for thirty years or more as herein provided, shall, upon his application be retired from further service upon a yearly pension equal to two-thirds of the amount of such said average yearly salary; provided further, that any person, after becoming fifty-five years of age, who comes within the purview of this section, ,and who has otherwise complied with its provisions and who has served for twenty-five consecutive years, or more, as herein provided, shall upon his application be retired from further service upon a yearly pension equal to one-half of the amount of said average yearly salary."

Section 50(d): "PHYSICAL DISABILITY: RESTORATION Whenever ,any person, while serving as a member of the Fire or Police Department of the City of Albany shall become physically disabled by reason of any bodily injury received in the immediate or direct performance or discharge of his duty as such member of the Police or Fire Department, said board may, if it deems it to be for the good of said Police or Fire Department, retire such person from said department, and order and direct that he shall be paid from said fund, during his lifetime, a *yearly pension equal to one-half (½) of the amount of salary attached to the rank which he may have held on such Police or Fire Department at the date of such retirement;* provided, that when such disability shall cease, such pension shall cease, and such person shall be restored to active service at the same rank at which he was retired. Upon the death of such person then on disability pension, the widow and/or children of the deceased member of the Police or Fire Department shall receive the same benefits from the Fire or Police Relief or Pension Fund as provided in Paragraph (q) of Section 50 of the Charter of the City of Albany." (Italics added.)

[3]Plaintiff Davis on January 1, 1950, at the rank of sergeant of the police department, under section 50(c), after holding said rank for five years immediately prior to retirement;

Plaintiff Varni on July 1, 1958, at the rank of captain in the fire department, under section 50(c), after holding said rank for five years immediately prior to retirement;

Plaintiff Pimental on February 1, 1959, at the rank of chief of the fire department, under section 50(c), after holding said rank for five years immediately prior to retirement;

Plaintiff Newhouser in January 1959 at the rank of inspector of the police department, under section 50(d);

Each of the plaintiffs complied with all of the charter requirements for retirement pay pursuant to sections 50(c) and (d) and are entitled to full and lawful payments thereunder. The salaries attached to the ranks that each plaintiff held prior to retirement have been substantially and frequently increased since his retirement. The City paid and continues to authorize and pay to plaintiffs retiring under section 50(c) a pension based on the applicable specified percentage of the average of five years' salary attached to the rank held in the appropriate department for a period of five years next preceding his date of retirement; to plaintiffs retiring pursuant to section 50(d), pensions equal to one-half of the salary attached to the rank held in the department at the date of retirement.

The trial court found the language of sections 50(c) and (d) requires the payment of benefits that fluctuate with the increases in the salary of the rank of the active firemen and policemen and concluded that the amount of the pension fluctuation pursuant to section 50(c) shall be computed by taking the applicable specified percentage thereunder of the average yearly salary of the corresponding active rank for the next preceding five-year period, *at the beginning of each fiscal year;* the amount of the pension fluctuation pursuant to section 50(d) shall be computed by taking one-half of the amount of each change of salary of the corresponding active rank. The court concluded that the City had improperly failed to pay to each of the plaintiffs increased pension payments to which they are entitled by virtue of the charter provisions. The court further concluded that the City was not estopped from raising the three-year statute of limitations, and issued its peremptory writ directing that the City pay to each of the plaintiffs the amount due under the applicable charter provision and computed as indicated above for a period of three years prior to the filing of the petition.

The City contends that the trial court erred in concluding that sections 50(c) and (d) provide for a pension benefit that fluctuates so that the benefits paid are based on the current salaries attached to the rank or ranks held by the retired person; plaintiffs contend that the trial court erred only as to the method of computation decreed for section 50(c) retirees, and in concluding that the City was not estopped from raising the three-year statute of limitations.

The City argues that the rank of both pension provisions provides only for a fixed pension based on the salaries attached to the rank or ranks held by the retired person at the time of his retirement. Thus, the City

Plaintiff Symington in 1965 at the rank of captain in the fire department, under section 50(d); and

Plaintiff Freeman on May 15, 1968, at the rank of inspector in the police department under section 50(c), after holding said rank for five years immediately prior to retirement.

argues that the language "for the period of five years," etc. modifies and defines the phrase "the average yearly salary." The court, however, found that the phrase "for the period of five years" etc. is intended only to modify and define the words "the rank" and did not affect the phrase "the average yearly salary." This interpretation is completely consistent with the substantially identical language found in *Casserly* v. *City of Oakland*, 6 Cal.2d 64 [56 P.2d 237]; *Terry* v. *City of Berkeley*, 41 Cal.2d 698 [263 P.2d 833]; *Eichelberger* v. *City of Berkeley*, 46 Cal.2d 182 [293 P.2d 1]; and *Cochran* v. *City of Long Beach*, 139 Cal.App.2d 282 [293 P.2d 839]. The City's attempt to distinguish these cases on their facts is not convincing. In each instance, language substantially identical to that involved here was held to create a fluctuating pension provision. In rejecting a contention similar to that raised by the City here, the court in *Terry, supra*, said at pages 701 and 702: "The defendants contend that the Casserly and other similar cases are not applicable to the facts of the present case because of the difference in the language employed. But they fail to point out a material variation pertinent to the issue here under consideration. *True, the provisions of the ordinance might be susceptible to more than one interpretation.* But ambiguity and uncertainty in this type of legislation require, under accepted rules, a construction which will, if reasonably possible, accomplish the objects and purposes of the legislation. ▇ 'It is a general and well recognized rule that pension provisions shall be liberally construed in favor of the applicant.' (*Gibson* v. *City of San Diego*, 25 Cal.2d 930, 935 [156 P.2d 737]; see, also, *Lyons* v. *Hoover, ante*, p. 145 [258 P.2d 4]; *McKeag* v. *Board of Pension Commrs.*, 21 Cal.2d 386, 390 [132 P.2d 198].)" (Italics added.)

▇ Equally without merit is the City's attempt to argue that its system is like that of the State of California (Gov. Code, § 20000 et seq.) as there is no evidence here that the City contracted with the state to become a part of that system. Rather, the uncontroverted evidence indicated that the City enacted language that has been subsequently and uniformly construed by the cases to provide for a fluctuating pension provision. The fact that at the time of enactment and perhaps thereafter, the City or some of its officials believed that the provision was for a fixed pension is of no relevance in view of the repeated judicial constructions to the contrary. As pointed out by the trial court in its very helpful and well reasoned memorandum opinion, if sections 50(c) and (d) intended to achieve a different result, the language adopted should have been identical to that of the resolution relating to the retirement of plaintiff Davis. That resolution declared that his benefits should be based on "his average yearly salary in five years next preceding the date of said retirement." We conclude, therefore, that the trial court, in accordance with the well established

rule of *Terry* v. *City of Berkeley, supra,* and the other cases cited, correctly interpreted the language of sections 50(c) and (d) to provide for a fluctuating pension benefit.

 We turn, therefore, to plantiffs' appeal and the contentions concerning the particular method of computing the benefit under section 50(c) and the statute of limitations. Plaintiffs argue that the trial court erred in the method adopted for the computing of the fluctuating benefit under section 50(c). The trial court concluded that the proper method was to compute the average salary for each rank for a five-year period and recompute the benefits for each rank each year by adding the new current year and dropping the last or fifth year. By this method, all retirees of a particular rank receive an identical retirement benefit. The particular method here adopted was the third of several alternative methods submitted by plaintiffs to the trial court in a letter dated February 26, 1969. The remaining two methods presented there and now reargued as proper methods, are set forth in the footnote below.[4]

Significantly, on the matter of how the fluctuating benefits are to be computed, the charter provides no clear guidelines except the five-year period. Accordingly, this court must uphold any reasonable and fair method adopted by the trial court. Nor can we agree with plaintiffs that either of the other methods was expressly mandated or approved by *Terry* v. *City of Berkeley, supra,* or any of the other authorities. The *Terry* case, like the others, merely held that language similar to that here in issue created a fluctuating benefit and did not reach the question of exactly how the benefit was to be computed. Nor can we agree that the method of computation approved will necessarily result in significant and obviously intended inequities. Rather, the five-year averaging process is designed to result in giving employees with identical rank and experience an identical retirement benefit. As the method adopted was fair, equitable and consistent with the five-year period set forth in the charter, we conclude that the trial court did not err in adopting it.

 Finally, we turn to the contention that the trial court erred in concluding that the City was not estopped from raising the applicable three-year statute of limitations (Code Civ. Proc., § 338). Plaintiffs' contention

---

[4]"1. Fifty per cent of the yearly salary *at the date of retirement* of the rank held for five years prior to retirement constitutes the initial retirement pay. Fifty per cent of each change in the salary of the active rank in question is paid to each retiree as the change occurs in the appropriate active rank.

"2. Fifty per cent of the average of the salary attached to the rank held for five years prior to retirement constitutes the initial retirement pay. Fifty per cent of each change in the salary of the active rank in question is paid to each retiree as the change occurs in the appropriate active rank."

is based chiefly on the fact that in 1951, at the time of his retirement or shortly thereafter, plaintiff Davis had an informal street corner conversation with the then city attorney, Mr. Plotner, as to whether his retirement benefits were fixed or fluctuating and was informed that the benefits were fixed. Apparently, several months later, plaintiff Davis had another similar oral conversation on the street with Mr. Plotner.

Estoppel is a question of fact and the trial court here found that the City was not estopped from raising the statute of limitations. As stated in *Driscoll* v. *City of Los Angeles,* 67 Cal.2d 297, 306 [61 Cal.Rptr. 661, 431 P.2d 245]: ██ "Whether, in a situation where a claim is prosecuted against it by an employee, former employee or other person deriving his claim from either, a municipal corporation or other public agency may be estopped to assert the statute of limitations against the plaintiff because of such agency's advice to such claimant concerning his substantive rights against the agency, depends upon whether the public agency acted in an unconscionable manner or otherwise set out to, or did take unfair advantage of plaintiff."

██ Here, the trial court could properly find from the evidence that the casual conversations on the street with the city attorney were not official acts of the City, whereby the City unconscionably or otherwise set out to, and did take unfair advantage of plaintiffs. Thus, it was not error for the court to rule that the City was not estopped from raising the three-year statute of limitations.

Affirmed. Each party to bear own costs on appeal.

Shoemaker, P. J., and David, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.